| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

In re : Chapter 7

MOHAMMED S. MAHMUD, : Case No. 07-13994 (AJG)

        Debtor.

RICHARD E. O'CONNELL, ESQ., as Chapter 7
Trustee for the Estate of Mohammed S. Mahmud,

        Plaintiff,

        v. : Adv. Pro. No. 08-01214 (AJG)

IKECHUKWUP DIBIA, ESQ., DIMAHKA, INC.,
DEAN RESKAKIS, ESQ.,
SACCO & FILLAS, LLP, JAVED CHOWDRY,
VM MILLER MART INC., AKHTER HOSSAIN,
and SAYEDA MOIN,

        Defendants.

**OPINION AND ORDER DENYING MOTION FOR ENTRY OF DEFAULT JUDGMENT AND GRANTING REQUEST TO SET ASIDE ENTRY OF DEFAULT AGAINST DEFENDANT DEAN RESKAKIS, ESQ.**

Before the Court (the "Court") is the motion (the "Motion") of Richard E. O'Connell, Esq., as Chapter 7 Trustee for the Estate of Mohammed S. Mahmud, (the "Plaintiff") for entry of a default judgment ("Entry of a Default Judgment"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), made applicable through Rule 7055 of the Federal Rules of Bankruptcy Procedure ("FRBP"), against Dean Reskakis, Esq. ("Reskakis"). Reskakis opposes the Motion (the "Opposition") and requests the entry of default ("Entry of Default") against him

be set aside,[1] pursuant to Rule 55(c) FRCP, on the grounds that Reskakis did not willfully refuse to respond to the pleadings in this matter, that Plaintiff will not be prejudiced by allowing Reskakis to contest the Plaintiff's claim on the merits, and that a meritorious defense exists as to all of the counts against Reskakis.

For the reasons stated below, the Motion is denied, and the Entry of Default against Reskakis is set aside. Even assuming that service was proper, Reskakis sought to set aside the Entry of Default in a reasonable time, and there is no evidence that Reskakis willfully refused to respond to the pleadings in this matter, the Plaintiff will not be prejudiced by allowing Reskakis to contest the Plaintiff's claim on the merits, and a meritorious defense exists as to all of the counts against Reskakis.

## BACKGROUND

The matter before the Court arises from the Chapter 7 case of Mohammed S. Mahmud (the "Debtor"). On May 6, 2008, Plaintiff commenced this adversary proceeding against Reskakis and other defendants, including Reskakis's former employer, Sacco & Fillas, LLP ("Sacco & Fillas") (collectively, the "Defendants," or if referring to an individual defendant, the "Defendant"), by filing a complaint seeking, *inter alia*, judgment under various sections of the Bankruptcy Code and New York Debtor and Creditor Law against the Defendants for fraudulent transfers connected to Sacco & Fillas's closing of a real estate transaction (the "Transaction") on Debtor's behalf.

On May 7, 2008, the Clerk of the Court (the "Clerk") issued a summons (the

---

[1] Even though Reskakis did not formally move under Rule 55(c) FRCP to set aside the Entry of Default, the Opposition to the Motion is treated as a motion to set aside the Entry of Default. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (citing *Broder v. Charles Pfizer & Co.*, 54 F.R.D. 583 (S.D.N.Y. 1971); *Albert Levine Associates, Inc. v. Kershner*, 45 F.R.D. 450, 451 (S.D.N.Y. 1968); 10 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2692 (1973)).

"Summons") and notice of pretrial conference (the "Notice") in connection with this adversary proceeding. On May 8, 2008, Plaintiff served the Defendants with a copy of the Summons and Notice together with a copy of the complaint (the "Complaint") in connection with this adversary proceeding by regular mail at the respective work or home address of each Defendant. Plaintiff mailed the Summons and Notice and Complaint to Reskakis at the offices of Sacco & Fillas, but Reskakis's employment as a full-time associate at Sacco & Fillas, which had begun in February 2005, ended in May 2007. There is nothing in the record to indicate whether Sacco & Fillas forwarded the Summons and Notice and Complaint to Reskakis's home address. The answer to the Complaint was due by June 9, 2008. Reskakis did not answer the Complaint.

On June 18, 2008, Plaintiff filed an affirmation (the "Affirmation") in support of a clerk's entry of default against Reskakis and four other Defendants who had not answered the Complaint. Plaintiff served the Affirmation on Reskakis at the offices of Sacco & Fillas. On June 20, 2008, Plaintiff served Reskakis with a supplemental summons (the "Supplemental Summons") and Complaint by regular mail at 5 Braver Lane, Hempstead, NY 11550 ("5 Braver Lane"). While the Attorney Detail Report on the New York State Unified Court System website lists Reskakis's address as 5 Braver Lane, Reskakis's actual address is 5 Brower Lane, Hempstead, NY 11550. On or around July 21, 2008, Reskakis became aware of a subpoena (the "First Subpoena"), which was also purportedly mailed to 5 Braver Lane, requesting production of any documentation related to the Transaction.

The record is not clear as to how Reskakis became aware of the First Subpoena. Reskakis's affidavit states that he "received a letter from counsel dated July 21, 2008 requesting any documentation in [his] possession" related to the Transaction. Although Reskakis does not

3

specify whose counsel wrote him this letter, Reskakis responded to counsel ("Rothbaum") for two of the other Defendants that he was in receipt of the First Subpoena and did not have any documentation related to the Transaction. While neither the letter Reskakis states he received from Rothbaum nor the First Subpoena is in the record, Reskakis's Opposition states that "on or about July 21, 2008, various court pleadings were forwarded to Mr. Reskakis from the incorrect address." There is no evidence in the record that Reskakis received the Summons and Complaint along with the First Subpoena.

In a letter dated July 28, 2008, Reskakis responded to Rothbaum, stating that Reskakis left employment at Sacco & Fillas in May 2007 and that Reskakis had no documents, communications, or files relating to the Transaction. On August 5, 2008, Plaintiff issued a subpoena (the "Second Subpoena") to Reskakis demanding his appearance at a deposition on September 3, 2008, and production of documentation related to the Transaction on August 26, 2008. Plaintiff also issued a first demand (the "First Demand") for production and inspection of documents to Reskakis on August 5, 2008. While copies of the Second Subpoena and First Demand are included in the record, there is no affidavit of service for either the Second Subpoena or First Demand in the record.

On August 8, 2008, the Clerk entered entries of default, as authorized by Rule 55(a) FRCP, against Reskakis and the four other Defendants who had not answered the Complaint. In mid-August 2008, Reskakis contacted counsel ("Panzavecchia") about this case. On September 1, 2008, Plaintiff moved for entry of default judgments against Reskakis and three of the other

4

Defendants, with objections due on October 3, 2008.[2] A hearing on the Motion was scheduled for October 8, 2008. The affidavits of service attached to the Motion were identical in all respects, including their dates, to the affidavits of service attached to the Summons and Complaint served on May 8, 2008, and the Supplemental Summons and Complaint served on June 20, 2008.

On September 3, 2008, Reskakis did not attend the deposition scheduled for that day, and his default was noted in the deposition's transcript. However, on September 3, 2008, Panzavecchia emailed Plaintiff's counsel about Reskakis's possible retention of Panzavecchia. Panzavecchia thanked Plaintiff's counsel for the "update," suggested dates to reschedule the deposition, and stated that he would be discussing Reskakis's "option to move to vacate [sic] your Motion for a Default Judgment." Panzavecchia also asked for all pleadings filed in relation to the Motion. Accordingly, at least as of September 3, 2008, Reskakis, on his own or through his attorney, had actual knowledge that he was a defendant in this adversary proceeding.

Reskakis and Panzavecchia met in mid-September 2008 to discuss this case, but at that time, Reskakis asserts that he did not have sufficient funds to retain Panzavecchia. On September 24, 2008, the hearing on the Motion, scheduled for October 8, 2008, was adjourned to October 15, 2008. On October 1, 2008, Plaintiff moved (the "Contempt Motion") for an order compelling Reskakis to appear for a deposition and holding him in contempt of court for failing to attend the September 3, 2008, deposition. A hearing on the Contempt Motion was scheduled for October 15, 2008. The affidavit of service indicates that the Contempt Motion was also served on Reskakis at 5 Braver Lane. On October 14, 2008, Reskakis formally retained

---

[2] In the interim, one of the four other Defendants who had not answered the Complaint did so, and Plaintiff did not move for an entry of a default judgment against that Defendant.

Panzavecchia.

On October 15, 2008, the Court held a hearing on various matters related to this adversary proceeding, including the Motion against Reskakis and three[3] of the other Defendants. While the Court granted default judgments against three of the other Defendants because they failed to appear, plead, or otherwise defend themselves, Panzavecchia appeared on Reskakis's behalf and asked that Reskakis be permitted to respond to the Complaint. The Court declined to grant a default judgment against Reskakis and scheduled a hearing on the Motion and the Contempt Motion for November 6, 2008.

On October 29, 2008, Panzavecchia served counsel for Plaintiff, Rothbaum, and counsel for Sacco & Fillas with the Opposition by regular mail. On November 3, 2008, Plaintiff filed and served on Panzavecchia the same affirmation (previously defined as the "Affirmation) in support of a clerk's entry of default against Reskakis and the four other Defendants who had not answered the Complaint that Plaintiff filed on June 18, 2008, as its own opposition to the Opposition, even though default judgments against three of the other Defendants had already been signed and the fourth Defendant who had defaulted was defending himself *pro se*. Plaintiff enclosed as exhibits a printout of Reskakis's address as listed, 5 Braver Lane, on the Attorney Detail Report on the New York State Unified Court System website and the September 3, 2008, email from Panzavecchia.

On November 6, 2008, the Court held a hearing on the Motion, and the Court instructed Reskakis to file a proposed answer to the Complaint within a week. Reskakis filed the proposed answer (the "Proposed Answer") to the Complaint and cross-claims against the other Defendants

---

[3] *See supra*, n. 2.

on November 12, 2008. In substance Reskakis answers that any act or omission Reskakis took with respect to the Transaction was within the scope of his employment at Sacco & Fillas and as an agent of Sacco & Fillas and not in his individual capacity. Also at the November 6, 2008, hearing Plaintiff withdrew the Contempt Motion because Reskakis submitted to a deposition on November 4, 2008 and paid appropriate costs. On November 14, 2008, the Court signed a minute order withdrawing the Contempt Motion.

## DISCUSSION

**1. Relief Under Rule 55(c) FRCP**

Rule 7055 FRBP, Default, applies Rule 55 FRCP to cases under the Bankruptcy Code. Rule 55(c) FRCP, Setting Aside a Default or a Default Judgment, states that "[t]he court may set aside an entry of default for good cause." Motions for entries of defaults and relief from such entries are left to the court's sound discretion because it is in the "best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Because "good cause" is not defined by Rule 55(c) FRCP, the Second Circuit Court of Appeals has established three criteria for deciding whether to relieve a party from an entry of default. *See id.* at 96. "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is present." *Id.* at 96 (citing *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 507 (2d Cir. 1991); *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir. 1987); *Meehan*, 652 F.2d at 277). As a guiding principle, " 'good cause' . . . should be construed generously." *Id.* (noting that because defaults are generally disfavored and reserved for rare occasions, doubts as to whether to grant or vacate

7

a default should be resolved in favor of the defaulting party). Moreover, the Second Circuit has "expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (citing *Enron Oil*, 10 F.3d at 95; *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983); *Meehan*, 652 F.2d at 277).[4]

**a. Timeliness**

Rule 55(c) FRCP "sets forth no guidelines for determining within what period the defaulting party must move to set aside a default, but [the Second Circuit] think[s] it plain that such a motion must be made within a reasonable time." *Dow Chem. Pac. Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55.10[1], at 55-52 to 55-53 (1985); *id.* ¶ 55.10[2], at 55-59). In *Rascator*, the Second Circuit found that a district court properly considered the timeliness of the defendant's motion in seeking to set aside its default under the "good cause" standard. *See Rascator*, 782 F.2d at 336; *see also* 10 MOORE'S FEDERAL PRACTICE, § 55.50[1][b][iv], p. 55-63 (3d ed.). In that case, the defendant knew of a purported default judgment (which was actually an entry of default) against him for at least seven months before taking any action. The Second Circuit approved of the district court's allowing the default to stand because of the district court's finding that the "time to request . . . relief ha[d] long since passed." *See Rascator*, 782 F.2d at 336 (quotations in original). The Second Circuit also noted that the district court's docket indicated a notice of the purported default judgment was mailed to the parties by the clerk's office. *See id.* at 336.

---

[4] While a default judgment has not been entered against Reskakis, the Court notes that "the standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b)." *Meehan*, 652 F.2d at 276 (citing *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n. 5 (D.C.Cir. 1980), *Broder*, 54 F.R.D. at 583; *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 950 (N.D.Ind. 1975); 10 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 2692 (1973)).

In this adversary proceeding, Reskakis opposed the Motion[5] within a "reasonable time." Confusion as to Reskakis's address has pervaded this adversary proceeding. There is no evidence that Reskakis received the Summons and Notice and Complaint served on him at Sacco & Fillas on May 8, 2008. Plaintiff mailed the Supplemental Summons and Complaint to Reskakis at 5 Braver Lane. Even though that was the address listed for him on the Attorney Detail Report on the New York State Unified Court System website, it was nonetheless not the correct address for Reskakis. Finally, although the Clerk entered the Entry of Default against Reskakis on August 8, 2008, there is no evidence that Reskakis received notice of his default. When a default is entered, the Clerk's office mails a copy of the entry of default to the defendant's address listed on the plaintiff's affidavit of service for the complaint or on the affirmation in support of a clerk's entry of default or to both addresses if they conflict. In this case, both pleadings contained the identical affidavits of service, which listed the offices of Sacco & Fillas as Reskakis's address.

Although Reskakis states in his affidavit that he did not receive any notification, oral or written, of this adversary proceeding until he received a letter from unspecified counsel on July 21, 2008, Reskakis's Opposition indicates that "various court pleadings" were forwarded to him on that date. In Reskakis's letter to Rothbaum, Reskakis only makes reference to the First Subpoena. Therefore, other than the First Subpoena, it is not clear as to what documents Reskakis received on July 21, 2008, and whether Reskakis actually knew at that time that he was a defendant or just a witness. However, Panzavecchia's email to Plaintiff's counsel on September 3, 2008, states that Panzavecchia would be discussing with Reskakis his "option to

---

[5] *See supra*, n. 1.

9

move to vacate [sic] your Motion for a Default Judgment." As of that date, Reskakis unquestionably had actual knowledge that he was named as a defendant in this adversary proceeding,[6] so the Court will use that date as the starting point from which to measure whether Reskakis opposed the Motion[7] within a "reasonable time." The Court notes that even if Reskakis actually had notice he was a defendant as of his receipt of the First Subpoena, the analysis and the outcome would not change.

As stated previously, Plaintiff filed the Motion on September 1, 2008, against Reskakis and three of the other Defendants. The Motion set a hearing date of October 8, 2008, which, on September 24, 2008, was adjourned to October 15, 2008. During this period, even though Reskakis asserts that he did not have sufficient funds to formally retain Panzavecchia, Reskakis met with Panzavecchia to discuss the case and Panzavecchia asked Plaintiff for all pleadings filed in relation to the Motion, demonstrating Reskakis's intention to participate in the case.

At the October 15, 2008, hearing, Panzavecchia appeared on Reskakis's behalf and proffered Reskakis's opposition to the Motion, sought to vacate the Entry of Default, and presented a defense to the underlying counts against Reskakis in this adversary proceeding. Based upon the foregoing and because an opposition to a motion for the entry of a default judgment is treated as a motion to set aside the entry of a default,[8] the Court finds that Reskakis

---

[6] The Court declines to rule on the propriety of service in this case because the Court concludes that the Entry of Default is set aside in any event. The Second Circuit has approved of trial courts withholding judgment on the propriety of service when it is not outcome determinative. *See O'Callaghan v. Sifre*, 242 F.R.D. 69, 75 (S.D.N.Y. Mar. 14, 2007) (quoting *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 n. 11 (2d Cir. 1995) ("The decision of the District Court to avoid ruling upon the propriety of the service was wise, since the sound exercise of its discretion led it to conclude, correctly, that a default judgment was not justified in any event.")). Moreover, in the face of a dispute as to propriety of service or whether a defendant received a copy of a complaint at all, "it is clear that under the case law all doubts must be resolved in favor of trial on the merits." *See O'Callaghan*, 242 F.R.D. at 74-75 (quoting *Enron Oil*, 10 F.3d at 98).
[7] *See supra*, n. 1.
[8] *See id.*

10

sought to set aside the Entry of Default[9] within a "reasonable time." The Court also notes that Reskakis has adhered to all deadlines since the October 15, 2008, hearing, "making clear that [Reskakis] was not willing to forfeit his rights." *Enron Oil*, 10 F.3d at 98.

**b. Three-Prong Test**

    **i.     Willfulness of Default**

The Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless. . . . On the other hand, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (discussing *American Alliance Insurance Co. v. Eagle Insurance Co.,* 92 F.3d 57, 60-61 (2d Cir. 1996); *Davis v. Musler*, 713 F.2d 907, 915-16 (2d Cir. 1983); *Enron Oil*, 10 F.3d at 97). In *Enron Oil*, the Second Circuit found that "assuming that [the defendant] did not receive a second amended complaint, there could be no 'willfulness' in his failure to answer that pleading." *Enron Oil*, 10 F.3d at 98.

Similarly, in this case, Reskakis states in his affidavit that he never received any notification, oral or written, of this adversary proceeding until he received a letter from unspecified counsel on July 21, 2008, but even in his reply letter to Rothbaum, Reskakis only acknowledges receiving the First Subpoena.[10] Reskakis further states in his affidavit that he was never personally served with the Summons and Complaint or any other pleadings in this adversary proceeding. Reskakis's statements are corroborated by affidavits of service showing

---

[9] *See id.*

[10] The Court was not provided with a copy of the First Subpoena, so it is not clear whether the First Subpoena refers to Reskakis as a defendant. Reskakis's name does not appear as a defendant on the Second Subpoena. There, the "Defendant" (singular used on B255 (Form 255 – Subpoena in an Adversary Proceeding) (12/07)) is simply listed as Ikechukwup Dibia, Esq., et al.

incorrect addresses.  As in *Enron Oil*, Reskakis did not receive the Complaint prior to the answer date; therefore, as a matter of law, there can be no "willfulness" in his failure to answer the Complaint.

### ii.     Prejudice to Plaintiff

The Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice." *Davis*, 713 F.2d at 916 (citing *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 656-57 (3d Cir. 1982); *Gill v. Stolow*, 240 F.2d 672, 670 (2d Cir. 1957)).  "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Davis*, 713 F.2d at 916 (quoting 10 C. Wright, A. Miller and M. Kane, FEDERAL PRACTICE AND PROCEDURE:  CIVIL, § 2699 at 536-37 (1983)).  Plaintiff makes no such showing in this case.  In oral arguments, Plaintiff's counsel contends that Reskakis has been trying to "stonewall" Plaintiff and that a proposed settlement with the other Defendants might "blow up" if the Entry of Default were set aside because Reskakis could then also make various cross- and counter-claims, which would increase Plaintiff's litigation costs.  Plaintiff additionally argues that it is prejudiced because of Reskakis's failure to include an answer to the Complaint with the Opposition, forcing Plaintiff to guess as to how Reskakis might answer and whether cross- and counter-claims by Reskakis might affect settlements with other Defendants.

The crux of Plaintiff's prejudice argument goes to delay.  Plaintiff does not provide any evidence of fraud or collusion or that evidence will be lost.  Although Plaintiff argues that discovery in the case, which was the subject matter of one of the settlements with another Defendant, may be affected, Plaintiff does not argue that Reskakis's delay will cause "increased

difficulties of discovery." Plaintiff merely argues that allowing Reskakis to conduct discovery could imperil its proposed settlement with the other Defendants. The argument regarding the impact on the settlement is mere speculation[11] and does not provide a basis upon which prejudice could be found. Accordingly, Plaintiff has not made an adequate showing that would allow the Court to make a finding of prejudice.

### iii.  Meritorious Defense

The Second Circuit has held that a "defendant seeking to vacate an entry of default must present some evidence beyond conclusory denial to support his defense." *Enron Oil*, 10 F.3d at 98 (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986)). "The test of such a defense is measured not by whether there is a likehood that it will carry the day, but whether evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98 (citing *Keegel*, 627 F.2d at 374; *Davis*, 713 F.2d at 916). Reskakis states that at all times he was acting within the scope of his employment at Sacco & Fillas and as an agent for those two named partners. He further states that he was working under the direction and supervision of Sacco & Fillas's two named partners and that he was directed by them to conduct the Transaction.

While the Proposed Answer provided by Reskakis on November 12, 2008, is general in nature, Reskakis does not merely offer conclusory denials to support his defense but instead states that he was acting within the scope of his employment and as an agent for Sacco & Fillas and not in his individual capacity. This defense has merit and raises a question of fact as to whether Reskakis acted outside the scope of his employment or breached his fiduciary duty as an

---

[11] The Court notes that since the time Plaintiff made this argument, the Court approved a stipulation of settlement between Plaintiff and the other Defendants.

13

agent of Sacco & Fillas.[12] While there is an unanswered question as to why Reskakis signed certain checks, including one to himself, during the Transaction to parties that were not listed on the disbursement sheet that his counsel asserts Reskakis followed as directed, the case law requires that all doubts raised by Plaintiff be resolved in favor of a trial on the merits. *See Enron Oil*, 10 F.3d at 98. Accordingly, Reskakis must be given an opportunity to have his defense heard.

## CONCLUSION

The Motion for Entry of a Default Judgment, pursuant to Rule 55(b)(2) FRCP, made applicable through Rule 7055 FRBP, against Reskakis is denied and, pursuant to Rule 55(c) FRCP, the Entry of Default against Reskakis is set aside because Reskakis sought to set it aside in a reasonable time, and there is no evidence that Reskakis willfully refused to respond to the pleadings in this matter, the Plaintiff will not be prejudiced by allowing Reskakis to contest the Plaintiff's claim on the merits, and a meritorious defense exists as to all of the counts against Reskakis.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Motion for Entry of a Default Judgment, pursuant to Rule 55(b)(2) FRCP, made applicable through Rule 7055 FRBP, against Reskakis is denied; and it is hereby further

ORDERED that pursuant to Rule 55(c) FRCP, the Entry of Default against Reskakis is set aside; and it is hereby further

---

[12] In the Proposed Answer, Reskakis also asserts cross-claims against Sacco & Fillas for indemnification and against all the other Defendants for contribution.

ORDERED that the Proposed Answer is allowed.


Dated: New York, New York
       January 15, 2009

                                              **s/Arthur J. Gonzalez**
                                              ARTHUR J. GONZALEZ
                                              UNITED STATES BANKRUPTCY JUDGE